No. 25-30396

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

LANDMARK AMERICAN INSURANCE COMPANY,
*Plaintiff/Counter-Defendant-Appellant,*

v.

INSURANCE UNLIMITED OF LOUISIANA, L.L.C.,
*Defendant/Counter Claimant-Appellee,*

VALERIE MUSE,
*Defendant-Appellee.*

*On Appeal from the United States District Court for the
Western District of Louisiana, Civil Action No. 2:20-cv-01263-TAD-DJA,
The Honorable Terry A. Doughty, Presiding*

ORIGINAL BRIEF OF APPELLANT,
LANDMARK AMERICAN INSURANCE COMPANY

CIVIL PROCEEDING

GEORGE D. FAGAN, T.A. (#14260)
MATTHEW M. McCLUER (#33970)
JESSICA A. LONGACRE (#41319)
Leake Andersson LLP
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
Phone: 504-585-7500 / Fax: 504-585-7775
Emails:  *gfagan@leakeandersson.com
mmccluer@leakeandersson.com
jlongacre@leakeandersson.com*

*Attorneys for Appellant, Plaintiff and Counter-
Defendant, Landmark American Insurance Company*

i

# CERTIFICATE OF INTERESTED PERSONS

In accordance with Fifth Circuit Rule 28.2.1 and Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.  Landmark American Insurance Company, Appellant, Plaintiff and Counter-Defendant, a subsidiary of RSUI Group, Inc.;

2.  RSUI Indemnity Company, Landmark's affiliated company that is also a subsidiary of RSUI Group, Inc.;

3.  Covington Specialty Insurance Company Landmark's affiliated company that is also a subsidiary of RSUI Group, Inc.;

4.  Insurance Unlimited of Louisiana, LLC, Defendant, Counter-Claimant and Appellee;

5.  Edwin Robinson, member and owner of Insurance Unlimited of Louisiana, LLC;

6.  Valerie M. Muse, Defendant and Appellee;

7.  Sam's Residential, LLC, a former defendant;

8.  Sandra Leblanc, a former defendant;

9.  Manick Investments, LLC, a former defendant;

10. Anthony Mancuso, member and owner of Manick Investments, LLC;

11. Gloria Robinson, a former defendant;

12. Robby Robinson, a former defendant;

13. Chanel Esters, a former defendant;

14. Harold Iles, a former defendant;

15. Casey Leblanc, a former defendant;

16. Heidi Leblanc, a former defendant;

17. Dalbert Leday, a former defendant;

18.   Karl Martin, a former defendant;

19.   Walter Somers, Jr., a former defendant (deceased);

20.   Clarence Thibodeaux, a former defendant;

21.   Isaac Willis, a former defendant;

22.   Michael Willis, a former defendant;

23.   George D. Fagan of Leake Andersson LLP, counsel for Landmark American Insurance Company;

24.   Matthew M. McCluer of Leake Andersson LLP, counsel for Landmark American Insurance Company;

25.   Joshua K. Trahan of Leake Andersson LLP, counsel for Landmark American Insurance Company;

26.   Jessica A. Longacre of Leake Andersson LLP,, counsel for Landmark American Insurance Company;

27.   Cranay D. Murphy of Leake Andersson LLP,, counsel for Landmark American Insurance Company;

28.   Merrick J. Norman of Taylor, Porter, Brooks & Phillips L.L.P., counsel for Insurance Unlimited of Louisiana, LLC;

29.   Edward D. Hughes of Taylor, Porter, Brooks & Phillips L.L.P., counsel for Insurance Unlimited of Louisiana, LLC;

30.   Jonathan A. Moore of Taylor, Porter, Brooks & Phillips L.L.P., counsel for Insurance Unlimited of Louisiana, LLC;

31.   Harry J. Philips, Jr. of Taylor, Porter, Brooks & Phillips L.L.P., counsel for Insurance Unlimited of Louisiana, LLC;

32.   Thomas A. Filo, counsel for for Cross-Claimant and Third-Party Plaintiff Insurance Unlimited of Louisiana, LLC in the State Lawsuit;

33.   Richard E. Wilson, counsel for Cross-Claimant and Third-Party Plaintiff Insurance Unlimited of Louisiana, LLC in the State Lawsuit;

34.   V. Ed McGuire, III, counsel for Defendants Insurance Unlimited of Louisiana, LLC and Valerie M. Muse in the State Lawsuit;

35.   Karen M. Green, counsel for Defendants Insurance Unlimited of Louisiana, LLC and Valerie M. Muse in the State Lawsuit;

36.   W. Thomas Barrett, III, counsel for Plaintiff Web Tronics, LLC in the State Lawsuit.

Dated: September 24, 2025

*s/ George D. Fagan*

_____

GEORGE D. FAGAN
*Counsel for Landmark American Insurance Company, Appellant, Plaintiff and Counter-Defendant*

## STATEMENT REGARDING ORAL ARGUMENT

Landmark American Insurance Company ("Landmark" or "Appellant"), Appellant, Plaintiff and Counter-Defendant, through its counsel of record, respectfully submits that oral argument is neither necessary nor would it aid this Court in considering the issues on appeal, because the *Colorado River* factors on abstention clearly establish that the District Court legally erred by granting the Motion to Stay submitted by Insurance Unlimited of Louisiana, LLC, Appellee, Defendant and Counter-Claimant.[1]

---

[1] *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 813, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) ("*Colorado River*").

# **TABLE OF CONTENTS**

Table of Authorities ............................................................................. vii

Jurisdictional Statement .......................................................................... 1

Statement of Issues Presented for Review ................................................ 3

Statement of the Case ............................................................................. 3

    I.     Statement of the Facts ................................................................. 3

    II.    Procedural History ....................................................................... 6

        A.    The Federal Lawsuit ........................................................ 6

        B.    The State Lawsuit ........................................................ 14

Summary of the Argument .................................................................... 18

Law and Argument ............................................................................... 22

    I.     The Standard of Review is *De Novo* .......................................... 22

    II.    The *Colorado River* Abstention Doctrine ................................. 22

    III.   The Federal and State Lawsuits are *Not* Parallel
        Proceedings .............................................................................. 23

    IV.   The District Court Legally Erred by Misinterpreting
        and Misapplying the *Colorado River* Factors ........................... 32

    V.    Insurance Unlimited Waived and Should Have Been
        Judicially Estopped from Seeking Relief based on the
        *Colorado River* Abstention Doctrine ....................................... 48

    VI.   The Declaratory Judgment Act Weighs Against Abstention ..... 52

Conclusion ........................................................................................... 54

# **TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

*African Methodist Episcopal Church v. Lucien*,
   756 F.3d 788 (5th Cir. 2014) ................................................................ 36, 37

*Am. Fam. Life Assur. Co. of Columbus v. Anderson*,
   228 F.3d 410 (5th Cir. 2000) ...................................................................... 22

*Am. Family Life Ass. Co. of Columbus v. Biles*,
   714 F.3d 887 (5th Cir. 2013) ...................................................................... 26

*Am. Guarantee & Liability Ins. Co. v. Anco Insulations, Inc.*,
   408 F.3d 248 (5th Cir. 2005) ...................................................................... 25

*Amin v. Bakhaty*,
   2001-1967 (La. 10/16/01), 798 So.2d 75 ................................................... 28

*APTIM Corp. v. McCall*,
   888 F.3d 129 (5th Cir. 2018) ..................................................... 22, 33, 48

*Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*,
   369 U.S. 355, 82 S. Ct. 780, 7 L. Ed. 2d 798 (1962) ................................ 38

*Bennett v. DEMCO Energy Servs., LLC*,
   2023-01358 (La. 5/10/24), 386 So.3d 270 ................................................. 28

*Black Sea Inv., Ltd. v. United Heritage Corp.*,
   204 F.3d 647 (5th Cir. 2000) ....................................... 22, 33, 36, 41

*Boudreaux v. State, Dep't of Transp. & Dev.*,
   2001-1329 (La. 2/26/02), 815 So.2d 7 ....................................................... 28

*Boyer v. Trinity Universal Ins. Co. of Kansas*,
   576 So.2d 444 (La. 1991) .................................................... 28, 30, 31

*Brillhart v. Excess Insurance Co. of America*,
   316 U.S. 491 (1942) .................................................................................... 53

*Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*,
   962 F.2d 698 (7th Cir. 1992) ...................................................................... 24

*Chisom v. Jindal*,
  890 F. Supp. 2d 696 (E.D. La. 2012) .............................................................. 50, 51

*Colorado River Water Conservation District v. United States*,
  424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).............................. 5, 22, 48

*Couvillion Grp., L.L.C. v. Plaquemines Par. Govt.*,
  2020-00074 (La. 4/27/20), 295 So.3d ................................................................ 28

*Diamond Offshore Co. v. A & B Builders*,
  302 F.3d 531 (5th Cir. 2002) ............................................................................. 23

*Ergo Sci., Inc. v. Martin*,
  73 F.3d 595 (5th Cir. 1996) ............................................................................... 50

*Evanston Ins. Co. v. Jimco, Inc.*,
  844 F.2d 1185 (5th Cir. 1988) ........................................................................... 34

*FDIC v. Duffy*,
  47 F.3d 146 (5th Cir. 1995) ............................................................................... 44

*Felder v. Estelle*,
  693 F.2d 549 (5th Cir. 1982) ............................................................................. 50

*Forvendel v. State Farm Mut. Auto. Ins. Co.*,
  251 So. 3d 362 (La. 2018).................................................................................. 44

*Hall v. Zen-Noh Grain Corp.*,
  01-766 (La. App. 5 Cir. 11/27/01), 803 So. 2d 203 ........................................... 28

*Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*,
  903 F.2d 352 (5th Cir. 1990) ........................................................................ 26, 27

*Herman v. Tracage Dev., L.L.C.*,
  (La. App. 4 Cir. 9/21/16), 201 So.3d 935.......................................................... 30

*In Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Compensation*,
  851 F.3d 507 (5th Cir. 2017) ............................................................................. 26

*Kane v. Bank of America, Nat'l Ass'n*,
  2017 WL 2243055 (N.D. Ill. May 23, 2017) ...................................................... 51

*Karam v. St. Paul Fire & Marine Ins. Co.*,
  281 So.2d 728 (La. 1973).................................................................................... 28

*Kelly Inv., Inc. v. Cont'l Common Corp.*,
315 F.3d 494 (5th Cir. 2002) ........................................................................ 35

*Landmark Am. Ins. Co. v. Esters*,
600 F. Supp.3d 677 (W.D. La. 2022) ............................................................11

*Landmark Am. Ins. Co. v. Esters*,
2022 WL 1720379 (W.D. La. May 3, 2022) ..................................................11

*Landmark Am. Ins. Co. v. Esters*,
2022 WL 22949116 (W.D. La. July 26, 2022)................................................11

*Landmark Am. Ins. Co. v. Esters*,
2023 WL 3310353 (W.D. La. May 8, 2023) ..................................................11

*Landmark Am. Ins. Co. v. Esters*,
2023 WL 12098430 (W.D. La. Jan. 10, 2023) ...............................................11

*Landmark Am. Ins. Co. v. Esters*,
2024 WL 2393053 (W.D. La. May 23, 2024) ............................................... 12

*Landmark Am. Ins. Co. v. Esters*,
2025 WL 1779400 (W.D. La. Feb. 13, 2025) ............................................... 12

*Landmark Am. Ins. Co. v. Esters*,
2025 WL 1783717 (W.D. La. Feb. 19, 2025) ............................................... 12

*Lejeune v. Fontenot*,
2022-444 (La. App. 3 Cir. 1/4/23), 362 So.3d 911 .............................................. 28

*Luera v. M/V Alberta*,
635 F.3d 181 (5th Cir. 2011) ....................................................................... 38

*MidTexas Int'l Ctr., Inc. v. Myronowicz*,
2006 WL 2285581 (N.D. Tex. Aug. 9, 2006)................................................ 24

*Moore v. Gencorp, Inc.*,
633 So. 2d 1268 (La. 1994)........................................................................... 24

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................................................ 22, 23, 39

*Murphy v. Uncle Ben's, Inc.*,
  168 F.3d 734 (5th Cir. 1999) ............................................................. 22, 34

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ................................................................................ 51

*Ohio Bureau of Emp't Servs. v. Hodory*,
  431 U.S. 471 (1977) ................................................................................ 50

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996) .................................................................................. 1

*Ratcliff Recovery Servs., LLC v. City Place Investors, LLC*,
  2025-00115 (La. 4/23/25), 406 So.3d 1170 ............................. 28, 30, 31

*RepublicBank Dallas, Nat'l Assoc. v. McIntosh*,
  828 F.2d 1120 (5th Cir. 1987) ............................................................... 23

*Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*,
  48 F.3d 294 (8th Cir. 1995) ................................................................... 24

*Saucier v. Aviva Life & Annuity Co.*,
  701 F.3d 458 (5th Cir. 2012) ...................................................... 33, 35, 37

*Save Power, Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ................................................................. 36

*St. John the Baptist Par. Ass'n of Educators v. Brown*,
  465 So.2d 674 (La. 1985) ....................................................................... 27

*St. Paul Ins. Co. v. Trejo*,
  39 F.3d 585 (5th Cir. 1994) .............................................................. 52, 53

*State, Dep't of Child. & Fam. Servs. ex rel. A.L. v. Lowrie*,
  2014-1025 (La. 5/5/15), 167 So.3d 573 ........................................... 28, 30

*Stewart v. W. Heritage Ins. Co.*,
  438 F.3d 488 (5th Cir. 2006) ...................................................... 22, 23, 33

*Union Serv. & Maint. Co. v. Powell*,
  393 So.2d 94 (La. 1980) ......................................................................... 31

*Wells v. Fruth, Jamison & Elsass, PLLC*,
  2014-826 (La. App. 3 Cir. 2/4/15), 158 So.3d 216 ............................... 28

x

*Woodford v. Cmty. Action Agency of Greene County, Inc.*,
    239 F.3d 517 (2d Cir. 2001) ................................................................. 35

**Statutes**

Louisiana Constitution, article 3, § 1 ...................................................... 27
28 U.S.C. § 1291 ....................................................................................... 1
28 U.S.C. § 1332(a) .................................................................................. 1
28 U.S.C. § 2201 ..................................................................................... 52
Louisiana Code of Civil Procedure Article 1071 .............................. Passim
Louisiana Code of Civil Procedure Article 1111 ................................... 31
La. R.S. 22:41 ......................................................................................... 15
La. R.S. 22:1892 ..................................................................................... 15
La. R.S. 22:1973 ..................................................................................... 15

**Rules**

Federal Rule of Appellate Procedure 26.1 ................................................. 2
Federal Rule of Appellate Procedure 32(a)(5) ....................................... 58
Federal Rule of Appellate Procedure 32(a)(6) ....................................... 58
Federal Rule of Appellate Procedure 32(a)(7)(B)(i) .............................. 58
Federal Rule of Appellate Procedure 32(f) ............................................ 58

## JURISDICTIONAL STATEMENT

The District Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

In its April 24, 2025 Memorandum Order, the District Court granted the Motion to Stay submitted by Insurance Unlimited of Louisiana, LLC ("Insurance Unlimited", "IU" or "Appellee"), Appellee, Defendant and Counter-Claimant, and stayed and administratively closed the underlying lawsuit (referred to herein as the "Federal Lawsuit"), pending the outcome of a lawsuit entitled *Web Tronics, L.L.C. versus Insurance Unlimited of Louisiana, L.L.C.*, filed on August 26, 2021 in the Fourteenth Judicial District Court for the Parish of Calcasieu, State of Louisiana, Docket No. 2021-3619, Division "H" (referred to herein as the "State Lawsuit"). In its Memorandum Order dated July 8, 2025 ("Reconsideration Order"), the District Court denied Landmark's Motion for Reconsideration of the April 24, 2025 Memorandum Order ("Stay Order").

Pursuant to 28 U.S.C. § 1291 and the collateral order doctrine, the Stay Order and the Reconsideration Order are appealable final decisions, because those orders "present[] an important issue separate from the merits" that "amount[] to a refusal to adjudicate" the Federal Lawsuit.[2]

---

[2]   *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712-713 (1996).

- 1 -

- 2 -

On July 14, 2025, Landmark timely filed its Notice of Appeal, within 30 days of the District Court's entry of the Reconsideration Order on July 8, 2025.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     The District Court legally erred by finding that the Federal Lawsuit and the State Lawsuit are "parallel actions" under the *Colorado River* abstention doctrine and/or for any other reason.

2.     The District Court legally erred by concluding that the six *Colorado River* factors and the "other factors" described in its Memorandum Orders dated and April 24, 2025 and July 8, 2025, heavily weighed in favor of abstention and presented exceptional circumstances that warranted staying and administratively closing the Federal Lawsuit pending the outcome of the State Lawsuit.

3.     The District Court legally erred by failing to find that Insurance Unlimited of Louisiana, LLC waived and should have been judicially estopped from seeking relief based on the *Colorado River* abstention doctrine, based on its active, extensive and virtually exclusive involvement and participation in the Federal Lawsuit for over four-and-a-half years, when compared to the State Lawsuit.

## STATEMENT OF THE CASE

### I.     Statement of the Facts.

Insurance Unlimited is a licensed insurance agency with its principal office in Lake Charles, which formerly employed Valerie M. Muse ("Muse") as a licensed insurance producer and account manager.[3]

---

[3]     Insurance Unlimited and Muse may be referred to herein as the "IU Defendants."

In the State Lawsuit, Web Tronics' principal demand against the IU Defendants is based on communications that representatives of Web Tronics and Insurance Unlimited (including Muse) exchanged in March 2020 about whether the property insurance policy that Insurance Unlimited had procured and that ICAT previously issued to Web Tronics ("ICAT Policy") included any Business Income and Extra Expense Coverage ("BIEE Coverage").[4] No BIEE Coverage was added to the ICAT Policy prior to Hurricane Laura's landfall on August 27, 2020.[5]

As to the Federal Lawsuit, beginning around September 1, 2020, certain Insurance Unlimited customers started reporting to Insurance Unlimited that their properties appeared to be _uninsured_ for any damage caused by Hurricane Laura. After Muse admitted that her thefts and other misconduct caused certain IU customers' properties to be uninsured, Insurance Unlimited terminated Musa's employment on September 2, 2021.[6] Insurance Unlimited ultimately determined that Muse's misconduct spanned at least two years prior to Hurricane Laura's landfall. Due to Muse's thefts, conversion, misappropriation and other misconduct, Insurance Unlimited discovered that twelve customers had no property insurance that covered

---

[4] ROA.19700-19705 (Web Tronics' original Petition filed in the State Lawsuit), ROA.19704-19706 (Web Tronics' First Supplemental and Amending Petition filed in the State Lawsuit); ROA.19707-19723 (Insurance Unlimited's Cross-Claim and Third-Party Demand against Landmark filed in the State Lawsuit); ROA.20105-20112 (ICAT Policy excerpts); and ROA.20113-20118 (emails about adding BIEE Coverage).

[5] ROA.19700-19705, 19704-19706, 19707-19723, 20102-10104, 20113-20118.

[6] ROA.20050.

any physical or other damages sustained by their respective twenty-three properties.[7] Those twelve customers may be referred to herein as the "uninsured customers."

Landmark issued two "claims made and reported" Professional Liability Policies to Insurance Unlimited: Landmark Policy Number LHR780740, with a Policy Term from February 12, 2020 to February 21, 2021 ("2020-2021 Landmark Policy");[8] and Landmark Policy Number LHR787400, with a Policy Term from February 12, 2021 to February 21, 2022 ("2021-2022 Landmark Policy").[9]

On September 3, 2020, Insurance Unlimited's representatives began to disclose information to Landmark about Muse's misconduct and its apparent impact on certain IU customers, after which Landmark sent a reservation of rights letter to IU.[10] On September 4, 2020, Landmark issued a letter to Insurance Unlimited that disclaimed any coverage, while reserving its rights to request additional information and documents and to further evaluate the circumstances.[11]

On September 22, 2020, the Louisiana Department of Insurance ("LDI") issued a notice that Muse's producer license had been suspended for committing

---

[7]    ROA.20050-20051.
[8]    ROA.126-156, 19780-19806 (2020-2021 Landmark Policy).
[9]    ROA.19699 (March 4, 2025 Judgment in the State Lawsuit), ROA.19738 (Affidavit of Edwin S. Robinson dated January 10, 2025 regarding both Landmark Policies), and ROA.19747-19779 (2021-2022 Landmark Policy).
[10]   ROA.20032-20040.
[11]   ROA.1787-1794, 20032-20040. While the letter is dated September 3, 2021, it was sent on September 4, 2021. *See* ROA.20040.

various violations of Title 22 of the Louisiana Insurance Code.[12] The LDI thereafter revoked Muse's license through a Cease-and-Desist Order, Summary Suspension and Revocation Order dated October 7, 2020.[13]

## II. Procedural History.

### A. The Federal Lawsuit

On September 25, 2020, Landmark filed its Complaint ("original Complaint") in the Federal Lawsuit, seeking declaratory and other relief, based on its contention that the 2020-2021 Landmark Policy did not provide coverage for any of the circumstances that Insurance Unlimited had disclosed, which concerned Muse's theft, conversion, misappropriation, commingling and other misconduct, for which Exclusion O and/or other policy terms barred coverage.[14] In its original Complaint in the Federal Lawsuit, Landmark named Insurance Unlimited and Muse as defendants, as well as the following uninsured customers: Chanel Esters, Harold Iles, Casey Leblanc, Heidi Leblanc, Sandra Leblanc, Dalbert Leday, Karl Martin, Gloria Robinson, Robby Robinson, Sam's Residential, LLC, Walter Somers, Jr., Clarence Thibodeaux, Issac Willis, and Michael Willis.[15] On November 16, 2020, Insurance Unlimited filed its Answer and asserted a Counterclaim against Landmark with

---

[12]   ROA.543-547.
[13]   ROA.548-554.
[14]   ROA.104-124, 20055-20056.
[15]   ROA.104-124, 20055-20056. Casey Leblanc and Heidi Leblanc, and Gloria Robinson and Robby Robinson, are married to each other. Sandra LeBlanc is the member and manager of Sam's Residential, LLC.

respect to the uninsured customers that Landmark named as defendants in its original Complaint in the Federal Lawsuit.[16]

On March 9, 2021, Landmark filed its First Amended, Supplemental and Restated Complaint in the Federal Lawsuit ("Supplemental Complaint"), adding two other uninsured customers, Christina Landry and Manick Investments, as defendants, along with four other uninsured customers who had originally been named as defendants in Landmark's original Complaint but who had not been previously dismissed as defendants.[17]  On April 12, 2021, Insurance Unlimited filed its Answer and Restated Counterclaim in the Federal Lawsuit, asserting demands with respect to all uninsured customers named as defendants in Landmark's original Complaint and Supplemental Complaint.[18]

On November 9, 2021, Insurance Unlimited filed an Amended Answer in response to Landmark's Supplemental Complaint and included a Cross-Claim against The Ohio Casualty Insurance Company, in connection with Crime Protection Policy No. 5107861 ("Ohio Casualty Policy") that Ohio Casualty issued to Insurance Unlimited ("Ohio Casualty Policy").[19]  Ohio Casualty thereafter answered Insurance Unlimited's Cross-Claim.[20]

---

[16]    ROA.286-316.
[17]    ROA.610-635. Chanel Esters, Harold Iles, Sam's Residential, LLC (Sandra Leblanc) and Clarence Thibodeaux remained defendants.
[18]    ROA.699-758.
[19]    ROA.699-758.
[20]    ROA.1625-1637.

On December 28, 2021, Landmark filed its Second Amended, Supplemental and Restated Complaint in the Federal Lawsuit ("Restated Complaint"), in which Landmark only named three uninsured customers, because all other uninsured customers had been previously dismissed by that date.[21] In response, on January 18, 2022, Insurance Unlimited filed its Answer that included its Second Restated Counterclaim against Landmark with respect to all uninsured customers that Landmark named as defendants in its Complaints.[22]

Between October 14, 2020 and May 26, 2022, in consideration of payments funded by Insurance Unlimited, eleven of the twelve uninsured customers named as defendants in the Federal lawsuit executed Releases of Claims.[23] Separately, in consideration of a settlement payment made by Landmark, Manick Investments executed a Confidential Receipt and Release Agreement on or around July 5, 2022.[24] Because of those settlements, Landmark ultimately dismissed its claims against all uninsured defendants; any uninsured customers who had filed counter-claims, cross-claims or third-party demands likewise dismissed those demands.[25]

---

[21]  ROA.1436-1462. The Restated Complaint named Christina Landry, Sam's Residential (Sandra LeBlanc) and Manick Investments.
[22]  ROA.1468-1559.
[23]  ROA.19885, 20104, 20189.
[24]  ROA.19885, 20104, 20189.
[25]  ROA.395-396 (Gloria Robinson and Robbie Robinson); ROA.411-412 (Walter Somers, Jr.); ROA.418-419, 488-490 (Clarence Thibodeaux); ROA.481 (Casey Leblanc and Heidi Leblanc); ROA.482 (Dalbert Leday); ROA.483 (Karl Martin); ROA.484 (Michael Willis); ROA.485 (Isaac Willis); ROA.1082 (Harold Iles); ROA.1400 (Chanel Esters); ROA.16600 (Sam's Residential, LLC, Sandra LeBlanc, Christina Landry, Gloria Robinson and Manick

Between January 2, 2022 and March 10, 2022, after exchanging substantial written discovery and responses, the parties participated in eleven (11) depositions.[26] Throughout this litigation, the parties have exchanged voluminous written discovery and responses.[27]

Between filing of the original Complaint on September 25, 2020 and the entry of the July 7, 2025 Order denying Landmark's Motion for Reconsideration of the Stay Order, the Federal Lawsuit has been very comprehensively and heavily litigated by Landmark and Insurance Unlimited.[28] During that time, the District Court materially reduced and narrowed the claims and disputes between the parties, including dismissing Insurance Unlimited's demands with respect to nine of the twelve uninsured customers, as follows:

In its rulings, the District Court labeled the demands by the uninsured customers claims as either "theft" and "non-theft" claims. The "theft" claims are claims in which Muse converted the insurance premiums to her own use or in which Muse failed to pay, collect, disburse, or safeguard funds held by an insured, and the

---

Investments, LLC as defendants and dismissing those defendants claims against Landmark); and ROA.20056 (Stay Order dated April 24, 2025, p. 7 of 14).

[26]   ROA.19862.

[27]   ROA.19862, 19885.

[28]   The District Court's Docket Sheet includes 509 docket entries on 66 pages. ROA.66-103. The Record on Appeal is over 22,000 pages.

"non-theft" claims are claims in which Muse did not convert the premiums for her own use but failed to obtain or renew the policies.[29]

In its May 4, 2022 Memorandum Order, the District Court dismissed Insurance Unlimited's tort-based subrogation and other demands with respect to eight of the twelve uninsured customers (Chanel Esters, Harold Iles, Casey and Heidi Leblanc, Dalbert Leday, Karl Martin, Walter Somers, Jr., Issac Willis, and Michael Willis), based on Exclusion O of the Landmark 2020-2002 Policy.[30] In its subsequent July 26, 2022 Memorandum Order, the District Court dismissed Insurance Unlimited's claims with respect to Clarence Thibodeaux Based on Exclusion O, increasing the dismissal s to nine uninsured customers.[31]

Since April 27, 2022, the District Court has issued at least twenty-three (23) substantive rulings on a wide variety of issues,[32] which substantially narrowed, framed and defined the issues, before the entry of the April 24, 2025 Memorandum Order granting Insurance Unlimited's Motion to Stay, as these examples demonstrate:

---

[29]   ROA.15256-15258.

[30]   ROA.15247-15267.  Exclusion O bars coverage for any claims "based upon or arising out of . . . [c]ommingling, conversion, misappropriation or defalcation of funds or other property, or the inability or failure to pay, collect, disburse or safeguard any funds held by an Insured."

[31]   ROA.15964-15966.

[32]   ROA.15212-15220, 15229-15246, 15247-15267, 15921-15923, 15956-15966, 16188, 16189-16191, 16248-16256, 16258-16262, 16582-16585, 16898-16899, 16916-16917, 17088-17108, 17363-17364, 17371-17377, 17532-17540, 1941119418, 19419-19432, 19450-19459.

- In decisions issued in May 2022 and July 2022, the District Court *dismissed* Insurance Unlimited's demands for nine of the twelve uninsured customers based on Exclusion O of the 2020-2021 Landmark Policy, leaving only IU's demands with respect to Sam's Residential, LLC, Gloria Robinson and Manick Investments, LLC,[33] unless it was later determined that Landmark had waived or should be estopped from asserting its coverage defenses with respect to those demands;[34]

- After conducting a two-day bench trial on February 6-7, 2023 limited to the waiver and estoppel issues,[35] with Insurance Unlimited's consent, the District Court ruled that "Landmark is not required to indemnify IU for the settlements it paid on the claims of Esters, Iles, Landry, LeBlanc, Leday, Martin, Somers, Willis, and Thibodeaux" and that "[IU]'s demand that Landmark is barred from presenting coverage defenses against it based upon waiver and/or equitable estoppel is DENIED."[36]

- On May 23, 2024, the District Court dismissed Insurance Unlimited's bad faith claims for Landmark's failing to settle or pay any amounts to the three remaining uninsured customers (Sam's Residential, LLC, Gloria Robinson and Manick Investments, LLC) and limited Insurance Unlimited's bad faith claims to any damages caused by Landmark's breach of any duty to defend IU in connection with respect to the demands by those three customers;[37] and

---

[33]    ROA.15247-15266, 15956-15966. *See Also Landmark Am. Ins. Co. v. Esters*, No. 2:20-CV-1263, 2022 WL 1720379, at *10 (W.D. La. May 3, 2022) (finding that Exclusion O barred Insurance Unlimited's demands for the payments it made to Chanel Esters, Harold Iles, Christina Landry, Heidi and Casey LeBlanc, Dalbert Leday, Karl Martin, Walter Somers, and Michael Willis); and *Landmark Am. Ins. Co. v. Esters*, No. 2:20-CV-1263, 2022 WL 22949116, at *5 (W.D. La. July 26, 2022) ("[T]he Landmark policy excludes coverage for Insurance Unlimited's payment of the Clarence Thibodeaux claim.").

[34]    ROA.15246.  *See Also Landmark Am. Ins. Co. v. Esters*, 600 F. Supp.3d 677, 690 (W.D. La. 2022).

[35]    ROA.16583-16584. *See Also Landmark Am. Ins. Co. v. Esters*, No. 2:20-CV-01263, 2023 WL 12098430, at *2 (W.D. La. Jan. 10, 2023) (ordering a bifurcated trial of the waiver and estoppel issues).

[36]    ROA.17108. *See Also Landmark Am. Ins. Co. v. Esters*, No. 2:20-CV-01263, 2023 WL 3310353, at *10 (W.D. La. May 8, 2023).

[37]    ROA.17374-17375. *See Also Landmark Am. Ins. Co. v. Esters*, No. 2:20-CV-1263, 2024 WL 2393053, at *2-3 (W.D. La. May 23, 2024).

- On February 19, 2025, the District Court further ruled that Insurance Unlimited must present evidence "to show the type, amount, and/or policy limits" that any insured customers would have procured, since IU "is subrogated to the claims of Robinson, Sam's, and Manick" and "steps into the[ir] shoes;"[38] and "Landmark will be allowed to argue, ask questions, and produce evidence, if any, of comparative fault on the part of Robinson, Sam's, and Manick."[39]

After issuing the May 8, 2023 ruling following the trial on waiver and estoppel, the District Court issued three Scheduling Orders: October 4, 2023 Order setting a jury trial beginning on July 22, 2024;[40] May 30, 2024 Order re-setting the jury trial beginning on November 12, 2024;[41] and September 27, 2024 Scheduling Order rescheduling the jury trial to begin on May 19, 2025.[42]

On April 9, 2025 – over four years and seven months after Landmark filed suit and just 40 days before the jury trial set on May 19, 2025 – Insurance Unlimited filed its Motion to Stay,[43] nearly three-and-a-half years after IU filed its Cross-Claim in the State Lawsuit.[44] Landmark filed its Opposition on April 16, 2025.[45] IU filed its Reply on April 21, 2025.[46]  On April 24, 2025, the District Court issued its Stay

---

[38]  ROA.19411. *See Also Landmark Am. Ins. Co. v. Esters*, No. 2:20-CV-1263, 2025 WL 1779400, at *2 (W.D. La. Feb. 13, 2025).

[39]  ROA.19456-19458. *See Also Landmark Am. Ins. Co. v. Esters*, No. 2:20-CV-1263, 2025 WL 1783717, at *5 (W.D. La. Feb. 19, 2025).

[40]  ROA.17125-17131.

[41]  ROA.17382-17388.

[42]  ROA.17548-17554.

[43]  ROA.19935-19956.

[44]  ROA.17548-17554, 19873.

[45]  ROA.19854-19882.

[46]  ROA.19935-19956.

Order granting Insurance Unlimited's Motion to Stay,[47] indefinitely staying the Federal Lawsuit "pending the outcome of the parallel state proceeding" and further ordering that the Federal Lawsuit be administratively closed.[48]

When the original Stay Order issued,[49] the Federal Lawsuit was set for an estimated two-week jury trial in Monroe, Louisiana beginning on May 19, 2025.[50] The Stay Order rendered moot the three pretrial motions filed by Landmark and three by Insurance Unlimited,[51] as well as the related oppositions and replies.

On May 1, 2025, Landmark filed its Motions to Reconsider, to Alter or Amend and/or Grant Other Relief regarding the April 24, 2025 Stay Order,[52] which Insurance Unlimited opposed,[53] in response to which Landmark submitted a Reply.[54]

In its July 8, 2025 Reconsideration Order,[55] while acknowledging and correcting certain errors in its April 24, 2025 Stay Order, the District Court denied Landmark's Motion and maintained its abstention ruling by relying on Landmark's

---

[47] ROA.20050-20063
[48] ROA.20063.
[49] ROA.20050-20063
[50] ROA.17547-17548. The State Lawsuit is entitled *Web Tronics, LLC v. Insurance Unlimited of Louisiana, LLC*, and is pending in the 14th Judicial District Court, Parish of Calcasieu, Docket No. C-2021-3619, Division "H." *See* ROA.17547-17548.
[51] ROA.19487-19559,
[52] ROA.20064-20122, 20163-20195.
[53] ROA.20197-20220.
[54] ROA.2022-20282.
[55] ROA.20309-20319.

allegedly inconsistent or inequitable litigation conduct in the State and Federal Lawsuits as a proxy factor that purportedly "weighs heavily in favor of abstention."[56]

On July 14, 2025, Landmark filed its Notice of Appeal with respect to the District Court's Memorandum Orders dated April 24, 2025 and July 8, 2025.[57]

### B.    The State Lawsuit.

On August 26, 2021, nearly eleven months after Landmark filed its original Complaint, Web Tronics filed its original Petition for Damages in the State Lawsuit, naming Insurance Unlimited and Muse as defendants.[58] In its original Petition, Web Tronics' tort-based principal demands alleged that in March 2020, Insurance Unlimited and/or Muse: agreed to add BIEE Coverage to the existing ICAT Policy; accepted premium payments from Web Tronics; and failed to add that BIEE Coverage to the ICAT Policy prior to Hurricane Laura.[59]

On December 2, 2021, Web Tronics filed its First Supplemental and Amending Petition, adding Landmark as a Direct-Action defendant and alleging that "Plaintiff has discovered since the filing of the original Petition, that defendant, VALERIE M. MUSE, may not have taken the premium payments of plaintiff."[60]

---

[56]    ROA.20315-20316.
[57]    ROA.20320-20323.
[58]    ROA.19700-19703, 20056-20057.
[59]    ROA.19700-19703, 20056-20057.
[60]    ROA.19704-19705.

On December 9, 2021 – fifteen months after the Federal Lawsuit was filed – Insurance Unlimited filed a Cross-Claim and Third-Party Demand ("State Cross-Claims"), asserting demands for defense, indemnity and "bad faith" against Landmark with respect to the two Petitions that Web Tronics filed in its lawsuit. Additionally, ***duplicating*** the its Federal Counter-Claims against Landmark,[61] Insurance Unlimited's State Cross-Claims also asserted tort-based subrogation demands seeking reimbursement for the voluntary payments that IU paid to settle with the twelve insured customers named as defendants under the Federal Lawsuit.[62] Additionally, as its did in its Counter-Claims filed in the Federal Lawsuit,[63] Insurance Unlimited's State Cross-Claims included claims against Landmark for failing to defend IU and seeking awards for penalties pursuant to La. R.S. 22:1973, La. R.S. 22:1892, and La. R.S. 22:41,[64] based on the 2020-2021 Landmark Policy.

On August 27, 2022, Landmark agreed to provide a defense to both Muse and Insurance Unlimited in the State Lawsuit, subject to a reservation of rights.[65]

---

[61]   ROA.286-316, 699-758, 1468-1559.

[62]   ROA.286-316, 699-758 and 1468-1559. Insurance Unlimited's Cross-Claims referenced the following uninsured customers: Chanel Esters, Harold Iles, Christina Landry, Heidi Leblanc and Casey Leblanc, Dalbert Leday, Manick Investments, LLC, Karl Martin, Sam's Residential, LLC (Sandra LeBlanc), Gloria Robinson, Walter Somers, Clarence Thibodeaux, and Michael Willis.  While Landmark funded the settlement with Manick Investments, Insurance Unlimited contends that it effectively funded that settlement by paying the $25,000 deductible amount under the 2020-2021 Landmark Policy. ROA.19707-19723.

[63]   ROA.286-316, 699-758, 1468-1559.

[64]   ROA.19716-19719.

[65]   ROA.19819, 19884, 20057.

On January 10, 2025, Insurance Unlimited filed a Motion for Partial Summary Judgment seeking relief under the ***subsequent*** Landmark Policy No. LHR767400 with a policy Period of February 12, 2021 to February 12, 2022 ("2021-2022 Policy"), thereby acknowledging that the second Landmark Policy applies to Web Tronics'demands.[66] On March 11, 2025 Judgment, the State Judge issued a Judgment that referenced both Landmark Policies but failed to state which policy is applicable to Web Tronics' demands in the State Lawsuit.[67] Since both Landmark Policies are claims-made-and-reported policies, only one of the two policies could be applicable to Web Tronics' demands.[68] This interlocutory ruling became the pretextual basis for the Motion to Stay that Insurance Unlimited filed in the Federal Lawsuit on April 9, 2025.[69]

Prior to the entry of the Stay Order on April 24, 2025 in the Federal Lawsuit, very little progress had been made in the State Lawsuit during the three year and nine months since it had been filed on August 26, 2021: only minimal written

---

[66]　ROA.19707-19708.

[67]　ROA.19699, 19885.

[68]　ROA.20174-20175.  After Landmark appealed to this Court, Insurance Unlimited and Web Tronics verified that IU first received a written demand for money – a "claim" under both Landmark Policies– when it was served with Web Tronics' original Petition on November 8, 2021, during the Policy Period of the 2021-2022 Landmark Policy.

[69]　ROA.19681-19698.

discovery had been exchanged; no depositions had been taken; and only two hearings had been conducted.[70]

After the April 24, 2025 Stay Order issued in the Federal Lawsuit, Insurance Unlimited and Web Tronics filed a Motion for a Bench Trial in the State Lawsuit on May 1, 2025, which was the very first time that any party had ever filed such a motion in that case.[71]  In that Motion, Web Tronics stipulated that its demand was less than $50,000.

On May 16, 2025, Landmark filed a Motion for Partial Summary Judgment seeking the dismissal of any demands asserted by Insurance Unlimited in its Cross-Claims against Landmark "with respect to any cause of action that does not arise out of the principal demand that Web Tronics, L.L.C., Plaintiff, made and asserted against Insurance Unlimited, Valerie M. Muse and/or Landmark in Plaintiffs Petitions."[72]

On June 9, 2025, over Landmark's objections due to previously existing scheduling conflicts in other matters,[73] and despite Landmark's request for a jury

---

[70]  ROA.19732, 19884. On August 1, 2022, Landmark filed a Motion to Stay Insurance Unlimited's State Cross-Claim, which IU opposed and the State Court Judge denied on November 9, 2022.  No other Motion was filed in the State Lawsuit until January 10, 2025. ROA.19734-19814, 19890-19907.

[71]  ROA.20119-20122.

[72]  ROA.20229.

[73]  When the State Court issued the June 9, 2025 Pre-Trial Order, Landmark's counsel had a previously scheduled federal court five-day jury trial set on September 29, 2025 and had five other jury trials set to commence between August 11, 2025 and September 22, 2025.

trial, the State Judge issued a Pre-Trial Order setting a bench trial on October 1, 2025, 113 days later.

No payment has ever been made to Web Tronics in the State Lawsuit; the IU Defendants have contested the merits of Web Tronics' demands.[74]

## SUMMARY OF THE ARGUMENT

Landmark respectfully submits that this Court should vacate and set aside the District Court's Stay Order and Reconsideration Order under the circumstances involved here, as the following examples regarding the Federal Lawsuit demonstrate: Insurance Unlimited engaged in extensive written, deposition and other discovery for over four-and-one-half years before filing its Motion to Stay; the District Court conducted a two-day bench trial on February 6-7, 2023 on waiver and estoppel issues and rendered a decision; based on Insurance Unlimited and Landmark's substantial motion practice, the District Court issued a variety of rulings that defined and narrowed the issues, including the dismissal of Insurance Unlimited's demands based on its voluntary payments to nine of the twelve uninsured customers; and when the original Stay Order was entered on April 24, 2025, the Federal Lawsuit had been pending for over four-and-one-half years and the May 19, 2025 jury trial was set to proceed on the remaining issues in 26 days.

---

[74]     ROA.20103.

The District Court misapplied and misinterpreted nearly every factor under the *Colorado River* abstention doctrine, for the following reasons:

First, the Federal and State Lawsuits are not "parallel" because, in its principal demands in the Federal Lawsuit, Landmark contends that the prior 2020-2021 Landmark Policy bars or excludes any coverage for the demands made by the twelve uninsured customers whose combined twenty-three properties lacked any property insurance coverage when Hurricane Laura made landfall. In contrast, in the State Lawsuit, Web Tronics' principal demands are based on allegations that the IU Defendants failed to add BIEE Coverage to the ICAT Policy previously issued to Web Tronics, which involved a claim that was first made against Insurance Unlimited during the Policy Period of the 2021-2022 Landmark Policy. None of the twelve uninsured customers ever requested or had BIEE Coverage as part of their property insurance policies. Further, Insurance Unlimited's inclusion of tort-based subrogation and other demands with respect to the twelve uninsured customers in its State Court Cross-Claims is contrary to Louisiana Code of Civil Procedure Articles 1071 and 1111, because those demands do not arise out of and exceed the scope of Web Tronics' principal demands in the State Lawsuit.

Second, to find that three *Colorado River* factors favored abstention, two factors were neutral, and one factor weighed in favor of abstention, the District Court legally erred by misapplying five of the six *Colorado River* factors, because: (1) the

absence of jurisdiction over a res weighs against abstention and is not a neutral factor; (2) the lack of federal forum inconvenience weighs against abstention and is not neutral; (3) the potential for inconsistent judgments that may be resolved through *res judicata* weighs against abstention, not in favor; (4) the filing of the Federal Lawsuit over thirteen months before Insurance Unlimited filed its State Cross-Claims in the State Lawsuit weighs against abstention; and (5) the absence of federal law issues is a neutral factor, not one that favors abstention. Contrary to the District Court's erroneous findings, when properly applied, five of the six *Colorado River* factors favor abstention, one factor is neutral and no factor supports abstention.

Third, disregarding the fundamental principles of federalism, comity, conservation of judicial resources and other principles that underlie the *Colorado River* abstention doctrine, the District Court improperly anchored its abstention decision on "other factors" that center on Landmark's supposedly "inequitable" litigation decisions. Neither the "exigencies of the moment" resulting from a State Court ruling that only pertained to Web Tronics' Petitions nor the District Court's inaccurate or immaterial assumptions about Landmark's litigation tactics warrant abstention based on "other factors."

Finally, after presiding over the heavily litigated Federal Lawsuit for over four-and-a-half years and considering the scant progress of the State Lawsuit, the District Court legally erred by failing to find that Insurance Unlimited waived and

- 20 -

should have been judicially estopped from asserting abstention, particularly since Insurance Unlimited delayed making its request until 40 days before the jury trial of the remaining issues in the Federal Lawsuit was set to commence.

Landmark respectfully requests that the Court vacate and reverse the Stay Order and Reconsideration Order because the District Court misapplied five of the six *Colorado River* factors, cast aside the four-and-one-half years that that court and the parties spent comprehensively litigating the issues, improperly concluded that "exceptional circumstances" and "the clearest of justifications" warranted abstention, and thereby erroneously abdicated its "virtually unflagging obligation" to continue to exercise its jurisdiction over the Federal Lawsuit.

## LAW AND ARGUMENT

### I.    The Standard of Review Is *De Novo*.

This Court's review is *de novo* because the District Court legally erred by misinterpreting and misapplying numerous factors under the *Colorado River* abstention doctrine.[75]

### II.    The *Colorado River* Abstention Doctrine.

The *Colorado River* abstention doctrine imposes an extraordinarily demanding standard based on fundamental principles that heavily favor maintaining federal jurisdiction.  Federal courts possess a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and abstention constitutes an "extraordinary and narrow exception" to this fundamental duty.[76] The substantial presumption against abstention is "overcome only by exceptional circumstances," with "a heavy thumb on the scale in favor of exercising federal jurisdiction."[77]

Abstention requires the "the clearest of justifications" and must be based on principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."[78] This determination

---

[75]    *APTIM Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018) (citing *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649-50 (5th Cir. 2000)); *Am. Fam. Life Assur. Co. of Columbus v. Anderson*, 228 F.3d 410 (5th Cir. 2000) (citing *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999)).

[76]    *Colorado River*, *supra*, 424 U.S. at 817.

[77]    *APTIM Corp.*, 888 F.3d at 135; *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006).

[78]    *Colorado River*, 424 U.S. at 819; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

- 22 -

requires "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."[79]

The six *Colorado River* factors are based on evaluating: (1) the assumption by either court of jurisdiction over a res, (2) the relative inconvenience of the forums, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.[80]  As set forth herein, when properly applied, the six *Colorado River* factors overwhelmingly support maintaining federal jurisdiction, no "exceptional circumstances" warrant abstention here and the District Court's reliance on the "other factor" is entirely misplaced.

### III.    The Federal and State Lawsuits Are *Not* Parallel Proceedings

*Colorado River* abstention applies only when "parallel proceedings" are pending in state and federal court.[81] Suits are "parallel" if they "involve[e] the same parties and the same issues."[82] While "exact parallelism . . . is not required for such a finding[,]" the cases must be "substantially similar," and resolution of the State Court issues must "effectively dispose of all of the claims raised in the federal

---

[79]     *Id.*
[80]     *Stewart*, 438 F.3d at 491.
[81]     *Diamond Offshore Co. v. A & B Builders*, 302 F.3d 531, 540 (5th Cir. 2002) (citing *RepublicBank Dallas, Nat'l Assoc. v. McIntosh,* 828 F.2d 1120, 1121 (5th Cir. 1987)).
[82]     *Id.* (additional citations omitted).

case."[83] Moreover, "'a pending State Court action involv[ing] the same subject matter' is not enough to find substantial similarity."[84]

### A.     The Principal Demands in the Federal and State Lawsuits Involve Different Parties and Distinct Legal Issues.

Under Louisiana law, the terms principal demands and incidental demands" "distinguish generically one class of demand, the chief or principal demand, from a second class of demands that are dependent on the main demand, viz., 'incidental demands.'"[85] The actions are not parallel because the principal demands in the Federal and State Lawsuits are materially different and Web Tronics is *only* a party to the State Lawsuit.

In the State Lawsuit, Web Tronics' principal demand is based on its allegations that the IU Defendants failed to add BIEE Coverage to the existing ICAT Policy and against Landmark under the Louisiana Direct-Action statute for claims that were first made during the Policy Period of the 2021-2022 Landmark Policy. In the Federal Lawsuit, Landmark's Complaints solely concern its coverage-based challenges under the *prior* 2021-2022 Landmark Policy as well as its other defenses, with respect to the demands asserted by the twelve uninsured customers whose

---

[83]     *MidTexas Int'l Ctr., Inc. v. Myronowicz*, 2006 WL 2285581, at *3 (N.D. Tex. Aug. 9, 2006) (citing *McIntosh*, 828 F.2d at 1121; *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992).

[84]     *MidTexas*, 2006 WL 2285581, at *3 (citing *Fed. Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995)).

[85]     *Moore v. Gencorp, Inc.*, 633 So. 2d 1268, 1271 (La. 1994).

twenty-three properties were uninsured when Hurricane Laura made landfall, none of whom ever asserted any claims based on or had any BIEE Coverage.

While Web Tronics initially alleged in its original Petition that Muse had stolen premiums paid for the BIEE Coverage, Web Tronics changed its position in its Amended Petition.[86] Further, Insurance Unlimited contends that Web Tronics never paid any premium for BIEE Coverage and has consistently denied "that Web Tronics' alleged loss was caused by Insurance Unlimited's negligence or fault."[87] In contrast, Insurance Unlimited has repeatedly admitted that Muse stole, converted, commingled, misappropriated, defalcated, and/or failed to pay, collect, disburse or safeguard premium in connection with her dealings with at least eight of the twelve uninsured customers. The following examples of decisions by this Court establish that the Federal and State Lawsuits are not parallel.

In *American Guarantee & Liability Insurance Co. v. Anco Insulations, Inc.*,[88] this Court held that the actions were not parallel because "the state action does not encompass [all claims in the federal action]" and involved different parties.

---

[86]    *Compare* ROA.19700-19703 (Web Tronics' original Petition) and ROA.19704-19706 ("Plaintiff has discovered since the filing of the original Petition, that [Muse] may not have taken the premium payments of plaintiff. Alternatively, plaintiff.").

[87]    *See, e.g.*, ROA.19709 (¶11). During his September 16, 2025 deposition in the State Lawsuit, Web Tronics' principal Gerrit Lawrence confirmed that Web Tronics did not advance or pay premium to add any BIEE Coverage to the ICAT Policy.

[88]    *American Guarantee & Liability Insurance Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251-252 (5th Cir. 2005).

Similarly, in *American Family Life Assurance Co. of Columbus v. Biles*,[89] this Court found actions were "far from parallel" when "the state action undisputedly involves additional defendants and issues not involved in the federal action," emphasizing that substantial differences in parties and issues preclude a finding of parallelism. In *In Air Evac EMS, Inc. v. Texas, Department of Insurance, Division of Workers' Compensation*,[90] this Court again found actions were not parallel when "the parties are different on both sides" and the proceedings addressed different issues.

This Court's decision in *Hartford* is particularly relevant here:

Hartford's claim in federal court is a *Burnside* cause of action. As discussed *supra,* that action is "based on the third party's independent wrong to the employer." In contrast, the Mahers' action in State Court is a separate claim based on a wrong to the worker. ***Thus, although both cases involve the same underlying episode and entail significant overlapping proof, they concern independent wrongs. Moreover, the parties in the actions are disparate.*** The action in federal court concerns Hartford as plaintiff, whereas the action in State Court involves the Mahers as the complaining party with Hartford holding only a subrogation interest in any recovery received. Thus, because the state and federal cases address distinct interests and concern different litigants, the district court appropriately refrained from staying this action.[91]

Unlike *Hartford*, the principal demands at issue in the Federal and State Lawsuits at issue here do *not* involve the same episode or similar circumstances. The State

---

89   *American Family Life Ass. Co. of Columbus v. Biles*, 714 F.3d 887, 892 (5th Cir. 2013).

90   *In Air Evac EMS, Inc. v. Texas, Department of Insurance, Division of Workers' Compensation*, 851 F.3d 507, 521 (5th Cir. 2017).

91   *Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990).

Lawsuit is based on the IU Defendants' alleged acts and conduct regarding adding BIEE Coverage to Web Tronics' ICAT Policy that is being defended by those defendants on the merits, whereas Web Tronics is not a party to the Federal Lawsuit and the principal demands in that lawsuit solely concern Insurance Unlimited's tort-based subrogation and other demands for the property damages sustained by the properties owned by the twelve uninsured customers.

The Federal and State Lawsuits are not parallel and instead involve "distinct interests and concern[ing] different litigants."[92]

### B. Insurance Unlimited's State Lawsuit Cross-Claims May Not Include Its Tort-Based and Related Demands regarding the Twelve Uninsured Customers.

The District Court did not address Landmark's contention that the tort-based subrogation and other demands that Insurance Unlimited included in its State Lawsuit Cross-Claims with respect to the twelve uninsured customers improperly exceed the specific and narrow restrictions established by Louisiana Code of Civil Procedure Article 1071 for cross-claims and Article 1111 for third-party demands.

The Louisiana Legislature has broad authority to enact laws that define and describe the nature, scope and extent of "civil matters" that Louisiana district courts and other courts may adjudicate.[93] "Subject matter jurisdiction is created by the

---

[92]   *Id.*

[93]   *St. John the Baptist Par. Ass'n of Educators v. Brown*, 465 So.2d 674, 677 (La. 1985) ("Article 3, § 1 of the Louisiana Constitution of 1974 declares that '[t]he legislative power

constitution or legislative enactment, [] and cannot be waived or conferred by the consent of the parties[.]"[94] "The issue of subject matter jurisdiction addresses the court's authority to adjudicate the cause before it."[95] "If the court lacks the authority to render judgment, said judgment has no legal existence."[96]

Articles 1071 and 1111 and the decisions discussed herein establish that the State Court lacks the authority to adjudicate causes that are outside of the scope of Web Tronics principal demands, which is the case for the demands that relate to the twelve uninsured customers. As exemplified by the recent Louisiana Supreme Court's recent decision in *Ratcliff Recovery Services, LLC v. City Place Investors, LLC,*[97] Louisiana courts have consistently held that defendants may not use cross-claims or third-party demands to expand or exceed the scope of principal demands.[98]

---

of the state is vested in a legislature, consisting of a Senate and a House of Representatives.'").

[94] *Amin v. Bakhaty*, 2001-1967 (La. 10/16/01), 798 So.2d 75, 80 (internal citation omitted).

[95] *Lejeune v. Fontenot*, 2022-444 (La. App. 3 Cir. 1/4/23), 362 So.3d 911, 915, *reh'g denied* (Mar. 1, 2023), *writ denied*, 2023-00452 (La. 5/16/23), 360 So.3d 839 (*quoting Boudreaux v. State, Dep't of Transp. & Dev.*, 2001-1329 (La. 2/26/02), 815 So.2d 7, 13)).

[96] *Wells v. Fruth, Jamison & Elsass, PLLC*, 2014-826 (La. App. 3 Cir. 2/4/15), 158 So.3d 216, 220.

[97] *Ratcliff Recovery Services, LLC v. City Place Investors, LLC*, 2025-00115 (La. 4/23/25), 406 So.3d 1170, 1171

[98] *See, e.g., Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 732 (La. 1973); *Boyer v. Trinity Universal Ins. Co. of Kansas*, 576 So.2d 444, 446-447 (La. 1991); *State, Dep't of Child. & Fam. Servs. ex rel. A.L. v. Lowrie*, 2014-1025 (La. 5/5/15), 167 So.3d 573, 578; *Couvillion Grp., L.L.C. v. Plaquemines Par. Govt.*, 2020-00074 (La. 4/27/20), 295 So.3d 401; *Bennett v. DEMCO Energy Servs., LLC*, 2023-01358 (La. 5/10/24), 386 So.3d 270, 276; and *Hall v. Zen-Noh Grain Corp.*, 01-766 (La. App. 5 Cir. 11/27/01), 803 So. 2d 203, 206.

Article 1071 unambiguously states that a cross-claim may not include any demand that does not arise out of and was not asserted in Web Tronics' principal demands in the State Lawsuit, because it limits the *actionable* cross-claims to "a demand against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or a reconventional demand or relating to any property that is the subject matter of the original action." Insurance Unlimited's tort-based subrogated and other demands for the amounts that IU paid to settle the losses sustained by the twelve uninsured customers do not arise out of the same transaction or occurrence or the operative facts that form the basis for Web Tronics' principal demand: the IU Defendants' alleged failure in March 2020 to add BIEE coverage to the existing ICAT Policy issued to Web Tronics.

Articles 1071 and 1111 both only allow a demand to be made against a cross-defendant or a third-party defendant who may be liable to the cross-claimant or third-party plaintiff for all or part of the principal demand. While Landmark *may* be liable to Insurance Unlimited for Web Tronics' principal demand, Articles 1071 and 1111 do not allow the trial court to adjudicate Insurance Unlimited's other additional demands with respect to the twelve uninsured customers because those demands plainly exceed the scope of Web Tronics' principal demand. To paraphrase the Louisiana Supreme Court, "[i]n this case, [Insurance Unlimited's] third party demand can only appropriately assert that [Landmark] is bound to reimburse [IU]

- 29 -

should [IU] be found liable on [Web Tronics'] main demand claiming [that IU failed to add BIEE coverage to the ICAT Policy" [and] Insurance Unlimited accordingly "asserts no cause of action in the third party demand" against Landmark with respect to Insurance Unlimited's subrogated and other demands regarding its payments to the twelve uninsured customers.[99]

The Louisiana Supreme Court's decision in *Ratcliff Recovery* confirms the unremarkable principle that only cross-claims or third-party demands that state a cause of action may be properly joined or cumulated.  If that were ***not*** the case, the Louisiana Supreme Court in *Ratcliff Recovery* should have ended its decision with these two sentences:

> If Insurers disagreed with City Place bringing its cause of action within Ratcliff's suit, they should have raised an exception of improper cumulation. Because Insurers failed to timely raise this dilatory exception, it was waived.[100]

But the Louisiana Supreme Court did ***not*** end its decision at that point.  Instead, the Court additionally addressed and determined whether "City Place's allegations in the third-party demand were sufficient to state a cause of action in accordance with

---

[99] *Boyer v. Trinity Universal Ins. Co. of Kansas*, *supra*, 576 So.2d at 446-447; *See Also State, Dep't of Child. & Fam. Servs. ex rel. A.L. v. Lowrie*, *supra*, 167 So.3d at 578 ("When a third party plaintiff does not allege that the third party defendant is liable to them for all or part of the principal demand, the third party demand fails to state a cause of action."); and *Herman v. Tracage Dev., L.L.C.*, 2016-0082, 0083, p. 7 (La. App. 4 Cir. 9/21/16), 201 So.3d 935, 941 ("A third[-]party demand is a device principally used for making claims of contribution or indemnity in the event the defendant loses on the principal demand.").

[100] *Ratcliff Recovery*, *supra*, 406 So.3d at 1171.

La. C.C.P. art. 1111."[101] Again paraphrasing *Bennett*, City Place only stated an *actionable* third party demand because it alleged that the Insurers were bound to reimburse City Place should it be found liable on Ratcliff Recovery's main demand against City Place.[102]

Similarly, in *Union Serv. & Maint. Co. v. Powell*,[103] the Louisiana Supreme Court dismissed the defendant's third-party demand for defamation against the plaintiff's sole shareholder because defendant "ignored an available procedural vehicle that would have allowed him to bring his claim before the court," by filing a reconventional demand instead of a third-party demand.[104] As was the case in *Union Serv. & Maint. Co. v. Powell*, Articles 1071 and 1111 are "clear" and Landmark "has a right to rely on [their] provisions" to seek the dismissal of the demands regarding the twelve uninsured customers that are referenced in Insurance Unlimited's State Cross-Claims because they exceed the scope of Web Tronics' principal demands.[105]

The Federal and State Lawsuits are not parallel actions under the *Colorado River* abstention doctrine or under Louisiana law. The District Court legally erred by concluding otherwise.

---

[101]    *Id.* at 1172.
[102]    *Boyer v. Trinity Universal Ins. Co. of Kansas*, *supra*, 576 So.2d at 446-447.
[103]    *Union Serv. & Maint. Co. v. Powell*, 393 So.2d 94 (La. 1980).
[104]    *Id.* at 96.
[105]    *Id.* at 96.

**IV.** **The District Court Legally Erred by Misinterpreting and Misapplying the *Colorado River* Factors.**

Even if the actions were parallel (which Landmark denies), the District Court's multiple legal errors in its application and interpretation of the *Colorado River* factors warrant reversal. In its April 24, 2025 Memorandum Order, the District Court initially held that one factor weighed in favor of abstention (avoidance of piecemeal litigation), one factor weighed against abstention (order of obtaining jurisdiction), and the remaining four factors were neutral.[106] In its July 8, 2025 Reconsideration Order, the District Court acknowledged that "Landmark is correct" that "the Court did not correctly apply some of the *Colorado River* factors" and stated "the Court will reweigh these factors below."[107]

In its July 8, 2025 Reconsideration Order, the District Court found that three factors weighed against abstention, two were neutral, and only one favored abstention.[108] Nonetheless, the District Court again misapplied and misinterpreted the first, second and fifth factors (absence of jurisdiction over a res, absence of forum inconvenience, and absence of federal law issues, respectively). Further, the District Court maintained its prior abstention ruling by erroneously relying on Landmark's

---

[106]   ROA.20058-20060.
[107]   ROA.20315.
[108]   ROA.20319.

supposedly "inequitable" litigation conduct in the State and Federal Lawsuits as the predominant factor that purportedly "weighs heavily in favor of abstention."[109]

### A. First Factor: The Absence of Jurisdiction Over a Res Weighs *Against* Abstention.

In its original Stay Order, the District Court initially held that the first *Colorado River* factor regarding assumption of jurisdiction over a res was neutral, contrary to decisions by this Court.[110] In its July 8, 2025 Memorandum Order, the District Court reconsidered its original ruling and correctly held that the absence of jurisdiction over a res weighs against abstention.[111]

### B. Second Factor: The Absence of Forum Inconvenience Weighs *Against* Abstention.

The District Court similarly erred in its initial finding that the second factor regarding the relative inconvenience of forums was neutral, again contrary to decisions by this Court.[112] In its July 8, 2025 Memorandum Order, because both courts are located in Lake Charles, Louisiana, the District Court reconsidered its

---

[109]   ROA.20315-20316.

[110]   *APTIM Corp.*, 888 F.3d at 136 ("The first factor weighs against abstention. Because this is an in personam action, there is no res. An absence of property is not 'a merely neutral item, of no weight in the scales.' Instead, it 'supports exercising federal jurisdiction.'"); *Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006) ("We have rejected the contention that the absence of this factor is 'a neutral item, of no weight in the scales.' This factor supports exercising federal jurisdiction."); *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000) ("The absence of this factor weighs against abstention.").

[111]   ROA.20315.

[112]   *Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 463 (5th Cir. 2012) (quoting *Stewart*, 438 F.3d at 492) ("When courts are in the same geographic location, the inconvenience factor weighs against abstention.").

original ruling and correctly held that the relative inconvenience of forums factor weighs against abstention.[113]

### C. Third Factor: Piecemeal Litigation Factor Weighs Against Abstention.

In its April 24, 2025 Memorandum Order, the District Court erroneously found that "inconsistent rulings" between the State and Federal Lawsuits regarding the Exclusion O of the Landmark Policies posed a risk of piecemeal litigation,[114] contrary to decisions by this Court.[115] In its July 8, 2025 Reconsideration Order, while acknowledging that that inconsistent rulings alone do not support abstention,[116] the District Court maintained its view that this factor "weighs heavily in favor of abstention," because "the case would have to be tried in both state and federal court to resolve all of the claims" since Web Tronics is not a party to the Federal Lawsuit.[117]  The District Court legally erred in its rulings regarding the third factor, as follows:

First, the District Court's comment in its Reconsideration Order that all claims may not be resolved in the same forum because Web Tronics is not a party to the

---

[113]  ROA.20315.

[114]  ROA.20058-20059.

[115]  *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999) ("[P]revention of duplicative litigation is not a factor to be considered in an abstention determination.") (quoting *Evanston Ins. Co. v. Jimco, Inc.,* 844 F.2d 1185, 1190–91 (5th Cir. 1988)).

[116]  ROA.20315.

[117]  ROA.20316-20317.

Federal Lawsuit directly – or at least implicitly – confirms that the Federal and State Lawsuits are _not_ parallel actions, as Landmark contends in Section III above.

Further, this Court has further explained that while "any time duplicative litigation exists, the possibility of inconsistent judgments also exists[,] . . . . the problem of inconsistent judgments can be obviated through a plea of res judicata should one court render judgment before the other."[118] Where inconsistent outcomes may be prevented by res judicata, "this factor weighs in favor of retaining federal jurisdiction."[119] Assuming that the State Court may adjudicate such demands (which Landmark denies), res judicata may apply to the demands of the twelve uninsured customers in each lawsuit.[120]  Moreover, the fact that Web Tronics' demands will only be adjudicated in the State Lawsuit does not favor abstention, since there is no risk of inconsistent outcomes between the State Lawsuit and the Federal Lawsuit with respect to Web Tronics' demands.

### D.    Fourth Factor: The Order of Obtaining Jurisdiction Weighs Against Abstention.

In both of its rulings, the District Court held the fourth factor weighs in favor of retaining federal jurisdiction and against abstention.[121] The first-filed rule strongly

---

[118]    *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 498-499 (5th Cir. 2002) (citations omitted).

[119]    *Saucier*, 701 F.3d at 464 (quoting *Woodford v. Cmty. Action Agency of Greene County, Inc.,* 239 F.3d 517, 524 (2d Cir. 2001)).

[120]    *Id*.

[121]    ROA.20059, 20317.

supports maintenance of federal court jurisdiction in this case, as the Federal Lawsuit was filed nearly one year before the State Lawsuit. Decisions by this Court establish that the first-filed rule deserves considerable deference.[122]

### E. Fifth Factor: The Absence of Federal Law Issues Is "At Most Neutral" and Weighs Against Abstention.

In its April 24, 2025 Stay Order the District Court initially held that the presence of Louisiana law issues and the absence of federal law issues favored abstention,[123] even though this Court has held that this factor is at most neutral and may not weigh in favor of abstention.[124] On reconsideration, the District Court correctly held that "the lack of federal issues only makes this factor neutral,"[125] noting that "the presence of state law issues only weighs against abstention in rare circumstances" that are "not present here."[126]

---

[122]   *Save Power, Ltd. v. Syntek Fin. Corp.*, <u>121 F.3d 947, 950</u> (5th Cir. 1997).

[123]   <u>ROA.20060</u>.

[124]   *African Methodist Episcopal Church v. Lucien*, <u>756 F.3d 788, 800-801</u> (5th Cir. 2014) (holding that even in cases that involve "only issues arising under Louisiana law, we have assessed such cases - even some interpreting recent decisions of a state's highest court - as 'at most neutral' under the fifth factor."); and *Black Sea*, <u>204 F.3d at 651</u> ("The instant case involves only issues of state law. Nevertheless, '[t]he absence of a federal-law issue … [or] a mere lack of clarity in applicable state law does not counsel in favor of abstention.' … [T]he presence of state law issues weighs in favor of surrender only in rare circumstances.").

[125]   <u>ROA.20317</u>.

[126]   <u>ROA.20317</u>.

**F.    <u>Sixth Factor: The Adequacy of State Proceedings Weighs Against Abstention or Alternatively Is at Best Neutral.</u>**

In its original Stay Order and Reconsideration Order, this Court has held that the adequacy of the state proceedings factor is neutral.[127] This Court has held that this factor "can only be neutral or weigh against abstention; it cannot weigh in favor of abstention."[128] However, the mere adequacy of state proceedings does not alone render this factor neutral; it must be shown that State Lawsuit provides for complete and prompt resolution of all issues involved in the Federal Lawsuit.[129] The State Lawsuit is not an efficient or appropriate forum for the complete resolution of the demands involved in the Federal Lawsuit, for two reasons:

First, over Landmark's objections and notwithstanding its timely demands for a jury trial, the State Court set the State Lawsuit for a bench trial in its June 9, 2025 Pre-Trial Order, based on a stipulation by Web Tronics that *its* demands have a value of less than $50,000, exclusive of interest and costs.[130] In contrast, in the Federal Lawsuit, the remaining issues would have been decided through a trial by jury, which had been scheduled to commence on May 19, 2025 before the District Court entered

---

[127]    ROA.20060, 20317.

[128]    *African Methodist*, 756 F.3d at 801; *see also Saucier*, 701 F.3d at 465 ("the adequacy of state proceedings never weighs in favor of abstention - it is 'either a neutral factor or one that weighs against abstention.'").

[129]    *Id.*

[130]    ROA.20119-20122; *See Also* Landmark's Motion to Expedite Appeal filed on August 8, 2025, pp. 3-4, which references the State Court's decision to strike Landmark's requests for a trial by jury during a July 24, 2025 hearing, which was subsequently memorialized in a Judgment dated August 8, 2025, from which Landmark filed an application of supervisory writs of review to the Louisiana Third Circuit Court of Appeal.

its Stay Order.  The District Court's abstention ruling thus improperly deprived Landmark of its Seventh Amendment right to a jury trial of the demands regarding the twelve uninsured customers in the Federal Lawsuit.[131] As such, the State Lawsuit is not an adequate forum or proceeding to protect Landmark's Seventh Amendment right to a jury trial in the Federal Lawsuit.

Second, for the reasons more fully set forth in Section III(B), which are adopted herein, the State Lawsuit is not an adequate or appropriate forum because Louisiana Code of Civil Procedure Articles 1071 and 1111 restrict Insurance Unlimited rights to assert a cross-claim or third-party demand against Landmark to the scope of Web Tronics' principal demands against the IU Defendants and Landmark.  Here, Insurance Unlimited's tort-based subrogation and other demands based on the demands asserted by and the payments made to the twelve uninsured customers are plainly exceed the scope of Web Tronics' principal demands, which only concern the IU Defendants' alleged failure to add BIEE Coverage to the existing ICAT Policy.

In its present posture, the State Lawsuit is not an adequate or appropriate forum because: (1) it will not protect or preserve Landmark's Seventh Amendment

---

[131]   *Luera v. M/V Alberta*, 635 F.3d 181, 188 (5th Cir. 2011) ("If a claim is pleaded under diversity jurisdiction, the rules of civil procedure will apply, and the parties will be guaranteed, under the Seventh Amendment, a right to have the claim tried by a jury.") (citing *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360, 82 S. Ct. 780, 784, 7 L. Ed. 2d 798 (1962) ("This suit being in the federal courts by reason of diversity of citizenship carried with it, of course, the right to trial by jury.").

right to a jury trial that exists in the Federal lawsuit; and (2) Articles 1071 and 1111 limit and restrict Insurance Unlimited's actionable Cross Claims against Landmark to its defense indemnity and "bad faith" claims against Landmark solely with respect to the IU Defendants' alleged failure to add BIEE Coverage to the Web Tronics' existing ICAT Policy.

Because there is "substantial doubt" regarding the adequacy of the proceedings in the State Lawsuit, it was "a serious abuse of discretion to grant the stay or dismissal at all."[132]  Accordingly, the District Court legally erred in finding that this factor to be neutral, when it weighs against abstention.

### G.    The *Colorado River* Factors Weigh Heavily Against Abstention.

Properly applied, _none_ of the six *Colorado River* factors favor abstention. Instead, five of the six factors weigh heavily against abstention because: there is no jurisdiction over a res (first factor); there is no forum inconvenience (second factor); there is no risk of piecemeal litigation (third factor); the Federal Lawsuit was filed first and is further advanced (fourth factor); and the proceedings in the State Lawsuit are not adequate to protect Landmark's rights to a jury trial in the Federal Lawsuit and are not an appropriate forum for Insurance Unlimited's demands with respect to the twelve uninsured customers.  Additionally, the fifth factor is neutral at best and

---

[132]    *Moses H. Cone*, 460 U.S. at 28.

does not favor abstention. The District Court legally erred by abstaining from and staying the Federal Lawsuit, because *none* of the *Colorado River* factors support abstention.

**H.    The District Court Legally Erred by Relying on the "Other Factors" Included in its Reconsideration Order.**

In its Reconsideration Order dated July 8, 2025, the District Court found that Landmark engaged in two types of "inequitable" litigation-related conduct that supposedly constitute "other extraordinary circumstances" that warranted abstention, by "providing a defense to Muse in the state suit and denying a defense in the federal suit"[133] and by "attempting to obtain a default judgment against Muse" in the Federal Lawsuit.[134] The District Court also noted that "the state case is set to be tried on two alternative dates."[135]  The District Court's decision to abstain based on its disapproval of Landmark's conduct in those two specific circumstances fundamentally derogates from *Colorado River*'s six factors and its underlying principles. The District Court's reliance on such "other extraordinary circumstances" is entirely misplaced and lacks any reasonable basis, for multiple reasons.

---

[133]    ROA.20318.
[134]    ROA.20318.
[135]    ROA.20319.  In its Stay Order dated April 24, 2025, the District Court also stated that: "the federal case has progressed to a more advanced stage than the state proceeding," which the District Court attributed to Landmark having "to pay additional attorneys to defend the state suit, while they do not in the federal suit" and also because it is supposedly "in Landmark's best interest to advance the federal suit instead of the state suit;" and the State Court denied Landmark's Motion to Stay the State Lawsuit, in a Judgment dated November 9, 2022.  ROA.20060.

1.    **Landmark's Decisions Not to Defend Muse in the Federal Lawsuit and to Defend Muse in the State Lawsuit Have No Relevance to Abstention.**

Landmark's decision to disclaim coverage with respect to what ultimately included the demands made by twelve uninsured customers that are at issue in the Federal Lawsuit is separate and distinct from its August 2022 offer to defend Muse and Insurance in the State Lawsuit. Further, neither decision has any bearing on the "principles of federalism, comity, and conservation of judicial resources" that underlie abstention,[136] for multiple reasons:

First, when Insurance Unlimited filed its Answer, Affirmative Defenses and Counterclaim on November 16, 2020,[137] Insurance Unlimited and Muse had no reason to *defend* against any demands asserted by six of the twelve uninsured customers, because each had previously signed Releases based on IU's voluntary settlement payments.[138] A seventh uninsured customer, Casey LeBlanc, signed a Release on November 25, 2020.[139] Between May 21, 2021 and July 5, 2022, the remaining five uninsured customers signed separate agreements settling their demands.[140] Landmark had no duty or reason to defend Muse or Insurance against

---

[136]    *Black Sea*, 204 F.3d at 650.

[137]    ROA.286-316.

[138]    ROA.2202 (Karl Martin), 2203 (Dalbert LeDay), 2204 (Casey LeBlanc), 2205-2206 (Michael Willis), 2207-2209 (Walter Somers), 2211-2212 (Gloria Robinson); and 20104 (Second Declaration of George D. Fagan, p. 3, ¶ 10) ("Second Fagan Declaration").

[139]    ROA.20104 (Second Fagan Declaration, p. 3, ¶ 10).

[140]    ROA.20104 (Second Fagan Declaration, p. 3, ¶¶ 10-11) (Harold Iles, Chenel Esters, Christina Landry, Sam's Residential and Manick Investments).

any demands by any uninsured customers after July 5, 2022. Further, after July 5, 2025, the remaining demands only consisted of Landmark's demands for relief against Insurance Unlimited and Muse and Insurance Unlimited's Counterclaims against Landmark.[141] Landmark had no duty or reason to defend Insurance Unlimited or Muse against *Landmark's* Complaints in the Federal Lawsuit.

Second, in its Memorandum Orders dated May 4, 2022 and July 26, 2022, the District Court dismissed Insurance Unlimited's tort-based subrogation and other demands at issue in the Federal Lawsuit with respect to nine of the twelve uninsured customers and further held that Landmark had no duty to defend in connection with those customer's demands under Exclusion O, based on Muse's uncontested misconduct.[142] While finding that Landmark had a duty to defend in connection with the demands by the three other uninsured customers,[143] any possible duties to do so ceased when Gloria Robinson released her claims on November 10, 2020, when Sam's Residential released its claims on May 26, 2022 and when Manick Investments released its claims on May 27, 2022.[144] As such, when the District Court entered its Stay Order on April 24, 2025, Landmark had had no reason to fund any

---

[141]    On June 13, 2022, this District Court dismissed Insurance Unlimited's Cross-Claim against Ohio Casualty based on the settlement between those parties. ROA.15879-15882.

[142]    ROA.15247-15267 (dismissals relating to Chanel Esters, Harold Iles, Casey and Heidi Leblanc, Dalbert Leday, Karl Martin, Walter Somers, Jr., Issac Willis, and Michael Willis), 15964-15966 (dismissal relating to Clarence Thibodeaux).

[143]    ROA.15247-15267, 15964-15966.

[144]    ROA.20104 (Second Fagan Declaration, p. 3, ¶¶ 10-11).

*defense* against Gloria Robinson's demands for nearly four-and-one-half years, or against any demands made by Sam's Residential and Manick Investments for nearly three years.

Third, while Landmark initially declined to defend Insurance Unlimited or Muse based on the allegations of theft included in Web Tronics' original Petition,[145] *after* Web Tronics filed its Amended Petition alleging that it had discovered premiums may not have been stolen, Landmark offered in August 2022 to defend Insurance Unlimited and Muse in the State Court Lawsuit against Web Tronics' demands for the IU Defendants' alleged failure to procure BIEE Coverage for the previously issued ICAT Policy.[146] Again, by August 2022, Landmark had reason or duty to defend the twelve uninsured customers' previously settled and dismissed demands and the only remaining demands in the Federal Lawsuit pertained to the disputes between Landmark, Insurance Unlimited and Muse.[147] .

Finally, Landmark had every right to make different decisions about whether to defend Muse or Insurance Unlimited in the Federal Lawsuit and the State Lawsuit, because the demands *against* Insurance Unlimited and Muse in each lawsuit are separate and distinct and involve different Landmark Policies. Web Tronics'

---

[145]    ROA.19887-19890 (Web Tronics' original Petition filed on August 26, 2021), 19725-19731 (November 17, 2021 letter from Landmark's counsel).

[146]    ROA.19884 (First Declaration of George D. Fagan, p. 2, ¶ 7).

[147]    On June 13, 2022, this District Court dismissed Insurance Unlimited's Cross-Claim against Ohio Casualty based on the settlement between those parties. ROA.15879-15882.

principal demands against the IU Defendants only concerned their alleged failure to add BIEE Coverage that were first made against Insurance Unlimited and reported to Landmark during the Policy Period of the 2021-2022 Landmark Policy. The twelve uninsured customers whose demands are at issue in the Federal Lawsuit were based on the IU Defendants' failure to procure any property insurance for twenty-three properties, had nothing to do with any BIEE Coverage and were all first made against Insurance Unlimited and reported to Landmark during the Policy Period of the 2020-2021 Landmark Policy, the first policy.

Even if the principal demands at issue in the Federal and State Lawsuits were the same, which they are not, this Court has held that "[c]onduct in paying one claim under a policy does not prevent the insurer from raising defenses to the policy."[148] Landmark exercised its right to make different coverage determinations based on the specific facts and circumstances of the different principal demands at issue in the Federal and State Lawsuits.[149] The District Court had no factual or legal basis to conclude that the decisions made in each lawsuit were "inequitable" merely because Landmark did not fund the defense of either of the IU Defendants in the Federal lawsuit but eventually did so in the State Lawsuit.

---

[148] *FDIC v. Duffy*, 47 F.3d 146, 150 (5th Cir. 1995); *Forvendel v. State Farm Mut. Auto. Ins. Co.*, 251 So. 3d 362, 366-67 (La. 2018).

[149] *Id.*

The District Court's predominant and erroneous emphasis on Landmark's litigation-related decisions improperly skewed and tainted its abstention rulings.

> **2.    Landmark's Exercise of its Procedural Right to Request the Entries of Defaults against Muse Has No Relevance to and Does Not Warrant Abstention.**

While preparing for the jury trial that was set to commence in the Federal Lawsuit on May 19, 2025, Landmark exercised its clear procedural right to request that the Clerk of Court *enter* defaults against Muse because she had never answered Landmark's First and Second Amended Complaints,[150] after which the Clerk of Court issued separate notices of the entry of default.[151] Landmark's counsel regarded the filing of these Motions as a prudent pre-trial housekeeping matter. Moreover, Landmark did *not* move for the entry of a default judgment against Muse. After Muse filed a Motion to Set Entry of Default on April 21, 2025,[152] the District Court entered an Order on April 22, 2025 that vacated all prior entries of defaults and granted Muse leave to file an Answer.[153] There was nothing "inequitable" about Landmark's exercise of rights allowed by the Federal Rules of Civil Procedure.

---

[150]    ROA.19671-19674 (Landmark's Motion for Entry of Default regarding its First Amended Complaint filed on April 8, 2025); and ROA.19676-19679 (Landmark's Motion for Entry of Default regarding its Second Amended Complaint filed on April 9, 2025).

[151]    ROA.19675 (Entry of Default on Landmark's First Amended Complaint), 19680 (Clerk's Entry of Default regarding Landmark's Second Amended Complaint).

[152]    ROA.19930-19934.

[153]    ROA.19961.

**3.    The District Court's Assumptions and Unanswered Hypothetical Questions in its Reconsideration Order Have No Relevance to and Do Not Warrant Abstention.**

The assumptions, inferences and hypothetical inquiries made or included in the "Other Factors" section of the District Court's Reconsideration Order are not appropriate factors for making a determining regarding abstention,[154] because such matters have no bearing on the *Colorado River* abstention factors, the principal demands in the Federal and State Lawsuits are fundamentally different and distinct, and those lawsuits are not parallel, for the reasons previously set forth herein.

Further, Landmark is not a law firm, its attorneys only represent Landmark and there are no inequitable or impermissible conflicts with respect to the actions of Landmark or its counsel in the two lawsuits. In August 2022, Landmark retained attorneys with the Plauche', Smith & Nieset law firm in Lake Charles to represent Valerie Muse and Insurance Unlimited in the State Lawsuit. Landmark and its counsel have *not* been privy to Muse's communications with her counsel in the State Lawsuit. As to the inquiry about whether Landmark is "privy to information Muse provided in the state suit against the defendants in the federal suit," Landmark's knowledge of such information is based on its participation in Muse's deposition that was taken in the State Lawsuit on September 22, *2025*.

---

[154]    ROA.20318-30319 (Reconsideration Order, Section vii entitled "Other Factors.").

Additionally, as to whether and to what extent Landmark gained any advantage in the Federal Lawsuit based on Muse's September 22, 2025 deposition in the State Lawsuit, Landmark submits that such matters concern its counsel's privileged impressions, which are also immaterial to determining whether the District Court's **_prior_** abstention rulings were appropriate or warranted. Further, Insurance Unlimited and Muse are the defendants in the Federal Lawsuit, not Landmark. There is no evidence-based or other reasons to believe or conclude that any conflict of interest exists on Landmark's part with respect to its actions in the two lawsuits. None of the circumstances postulated by the District Court in the Reconsideration Order's "Other Factors" section are extraordinary or exceptional nor do any present or involve "potential inequitable conduct" on the part of Landmark or its counsel, even if such were appropriate considerations for abstention.

In summary, Landmark's decisions not to defend Muse in the Federal Lawsuit and to defend Muse in the State Lawsuit, its exercise of its procedural rights to request the entry of defaults against Muse, the differences in the progress of the State and Federal Lawsuits, and the District Court's assumptions, inferences and unanswered hypothetical questions in its Reconsideration Order, do not constitute "the clearest of justifications" or "other extraordinary circumstances" that warrant or support the District Court's abdication of its "virtually unflagging obligation . . .

- 47 -

to exercise the jurisdiction given" to it.[155] By maintaining its decision to abstain and to stay this lawsuit pending the State Lawsuit, the District Court improperly sanctioned Landmark for its supposedly "inequitable" litigation-related conduct, contrary to the principles underlying *Colorado River* and its progeny.

## V. Insurance Unlimited Waived and Should Have Been Judicially Estopped from Seeking Relief based on the *Colorado River* Abstention Doctrine.

In the April 24, 2025 Memorandum Order, the District Court rejected Landmark's waiver and judicial estoppel arguments, by inaccurately stating that "no party in this case revealed to the Court that there was a parallel proceeding in State Court until this Motion was filed" and by erroneously basing its ruling on the premise that "the inconsistent rulings were the trigger that prompted the filing of the Motion to Stay" after the State Court's March 11, 2025 judgment.[156] The Court concluded there was "no judicial estoppel or waiver by IU" because the Motion to Stay was filed after the supposedly inconsistent *interlocutory* State Court ruling had been issued, and because Insurance Unlimited "obviously wanted to hear the case in one court - the one in which Landmark was providing IU with a defense."[157]

In the State Lawsuit, Landmark is *only* funding Insurance Unlimited and Muse's defense against Web Tronics' principal demands for the IU Defendants'

---

[155] *Colorado River*, 424 U.S. at 817-19; *See Also APTIM Corp.*, 888 F.3d at 135
[156] ROA.20061-20062.
[157] ROA.20061-20062.

alleged failure to add BIEE Coverage, a claim that Web Tronics has stipulated has a value less than $50,000, exclusive of interest and costs. Landmark is *not* funding Insurance Unlimited's *separate coverage counsel* to prosecute Insurance Unlimited's Cross-Claims against Landmark, nor has Landmark funded Insurance Unlimited's pursuit of its Counterclaims against Landmark in the Federal Lawsuit.

Additionally, the District Court's statements erroneously failed to address much less determine whether Insurance Unlimited should have been barred from filing a motion for abstention, based on construing *IU's* own actions and conduct in the context of waiver and judicial estoppel principles. Instead, in its Reconsideration Order, the District Court merely reaffirmed that "there has been no waiver because there were no inconsistent rulings until March 17, 2025" and that "the inconsistent rulings gave IU the grounds to file its motion to stay."[158] However, waiver and estoppel principles require evaluating Insurance Unlimited's overall actions and conduct in the Federal Lawsuit, which over a four-and-one-half year period included, *inter alia*: filing multiple Counterclaims Landmark, cross-claiming Ohio Casualty, propounding and exchanging substantial discovery requests and furnishing voluminous responses, producing approximately 25,000 pages of documents, filing or responding to dozens of motions, participating in over a dozen conferences with the District Judge and Magistrate Judge, taking or attending eleven depositions,

---

[158]   ROA.20314.

participated in the two-day bench trial held on February 6-7, 2023, being subject to deadlines and requirements included in four Scheduling Orders and filing or exchanging pre-trial submissions to prepare for the two-week jury trial set for May 19, 2025. The substantial, extremely time-consuming and extensive activities that Insurance Unlimited, Landmark and the District Court engaged in during those four-and-one-half years overwhelmingly exceed the minimal activity that occurred in the State Lawsuit before Insurance Unlimited filed its Motion to Stay on April 9, 2025, 40 days before the jury trial scheduled to commence on May 19, 2025. The timing of Insurance Unlimited decision to file a Motion to Stay warrants the conclusion that IU acted entirely on "exigencies of the moment" created by the State Court's ruling, by reason of which waiver and judicial estoppel principles should have barred Insurance Unlimited from filing a Motion that was plainly aimed only at derailing the May 19, 2025 jury trial set on May 19, 2025 in the Federal Lawsuit.[159]

This Court's decisions establish Insurance Unlimited waived its right to seek relief based on abstention by voluntarily submitting to the federal forum in the first place and thereafter diligently pursuing and advocating its responses and affirmative defenses to Landmark's Complaint and by aggressively and prosecuting its Counterclaims against Landmark.[160] Courts have consistently imposed and enforced

---

[159]   *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996).
[160]   *Felder v. Estelle*, 693 F.2d 549, 553 (5th Cir. 1982) (citing *Ohio Bureau of Emp't Servs. v. Hodory*, 431 U.S. 471, 479 (1977)); *Chisom v. Jindal*, 890 F. Supp. 2d 696, 721 (E.D. La. 2012).

waiver against parties that delay seeking abstention for strategic reasons. In *Kane v. Bank of America, National Association*, the district court stated that a three-year delay in seeking abstention was relevant because "future plaintiffs who do not want to be on the receiving end of a successful *Colorado River* motion after three years of litigation will almost always be on much firmer footing."[161] Here, Insurance Unlimited's four-and-a-half-year delay far exceeds the delays that courts have applied waiver principles to bar inconsistent conduct. Insurance Unlimited filed its Motion to Stay because of the favorable March 11, 2025 State Court ruling, not based on any legitimate concerns about duplicative litigation or federalism, which exemplifies the type of forum manipulation that the waiver doctrine is intended to prevent.[162] The District Court erred by failing to find that Insurance Unlimited had waived its right to seek relief based on *Colorado River* abstention.

Additionally, Insurance Unlimited should be judicially estopped from seeking abstention based on its fundamentally inconsistent and changing positions, which were undertaken to gain unfair advantage,[163] as the these examples demonstrate:

1. IU affirmatively invoked the federal court's jurisdiction by filing a Counterclaim seeking substantial monetary damages;

2. IU extensively litigated the Federal Lawsuit for over four-and-a-half years, including prosecuting its own counterclaims; and

---

[161] *Kane v. Bank of America, National Association*, 2017 WL 2243055, at *6 (N.D. Ill. May 23, 2017).

[162] *See Chisom*, 890 F. Supp. 2d at 721.

[163] *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

3.    After prolonged litigation in the Federal Lawsuit, and despite being served with Web Tronics' original Petition filed in the State Lawsuit on November 4, 2021, IU filed a Motion to Stay based on the State Lawsuit on April 9, 2025.

Insurance Unlimited's about face on the eve of the May 19, 2025 jury trial set in the Federal Lawsuit was clearly based on "exigencies of the moment" that had supposedly been created by the "favorable" State Court ruling, which is precisely the type of strategic manipulation that judicial estoppel should be used to prevent.

The District Court legally erred by failing to address and find that waiver and estoppel principles barred Insurance Unlimited from seeking relief based on abstention.

## VI.    The Declaratory Judgment Act Weighs Against Abstention

Even if *Colorado River* abstention was appropriate (which Landmark denies), the District Court's failure to properly address or consider additional grounds for rejecting abstention under the Declaratory Judgment Act provides an independent basis for reversing the stay order. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a district court has discretion to decide whether to entertain an action for declaratory relief.[164] The Supreme Court in *Brillhart v. Excess Insurance Co. of America* held that a federal district court entertaining a declaratory action "should

---

[164]    *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994).

ascertain whether the questions in controversy between the parties to the Federal Lawsuit . . . can be better settled in the proceeding pending in State Court." [165]

*Brillhart* and this Court's decision in *Trejo* establish that federal courts must consider whether declaratory judgment issues may be better settled in State Court by examining seven non-exclusive factors: (1) whether there is a pending action in which all matters in controversy may be fully litigated; (2) whether the plaintiff's suit is anticipatory; (3) whether the plaintiff engaged in forum shopping; (4) whether possible inequities exist in allowing the declaratory plaintiff to gain precedent in time or change forums; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit in federal court would serve judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties.[166]

All *Trejo* factors weigh against abstention here:

1. <u>No pending action exists in which all matters can be fully litigated</u>. The State Lawsuit is not a proper forum for adjudicating demands based on Insurance Unlimited's tort-based subrogation and other demands for any payments made to the twelve uninsured customers who had been originally named as defendants in the Federal Lawsuit, because those demands do not arise out of Web Tronics' principal demands regarding BIEE Coverage.

2. <u>Landmark's suit was not anticipatory</u>. Landmark filed suit after Hurricane Laura caused actual damage and coverage disputes

---

[165]    *Brillhart v. Excess Insurance Co. of America*, <u>316 U.S. 491, 495</u> (1942).
[166]    *Id.*; *Trejo*, <u>39 F.3d at 590-91</u>.

arose.  Insurance Unlimited filed its Counterclaims as part of the Answer it filed in the Federal Lawsuit on November 16, 2020.

3.    <u>Landmark did not engage in forum shopping</u>. Landmark filed the Federal Lawsuit in a proper federal forum in Lake Charles, based on diversity jurisdiction.

4.    <u>No inequity exists in allowing the federal case to proceed.</u> Insurance Unlimited voluntarily participated in federal litigation for over four-and-one-half years.

5.    <u>The federal forum is convenient.</u> Both courts are located in the same parish.

6.    <u>Judicial economy favors completing the federal case.</u> Very substantial judicial resources were invested and used over the course of four-and-one-half years of the heavily disputed and litigated issues in the Federal Lawsuit and the trial was imminent when Insurance Unlimited filed its Motion to Stay.

7.    <u>The federal court is not being asked to construe a State Court decree.</u>  The District Court addressed over twenty-five motions over the four-and-one-half years before the Motion to Stay was involved, none of which involved Web Tronics or any ruling rendered in the State Lawsuit.

The District Court's complete failure to address *Brillhart* abstention and the *Trejo* factors, despite Insurance Unlimited's reliance on declaratory judgment abstention arguments, constitutes an additional ground for reversing the District Court's abstention rulings, independent of the *Colorado River* analysis.

## <u>CONCLUSION</u>

The District Court's April 24, 2025 Memorandum Order granting Insurance Unlimited's Motion to Stay, and its July 8, 2025 Memorandum Order reversing in

part the abstention ruling but upholding the granting of the stay, collectively represent a fundamental misapplication of *Colorado River* abstention doctrine that should be reversed by this Court. Insurance Unlimited's Motion to Stay was transparently based on "exigencies of the moment"- filed just 40 days before trial and shortly after Insurance Unlimited clearly regarded as a favorable March 17, 2025 Judgment rendered in the State Lawsuit. This strategic timing, after four-and-one-half years of vigorous federal court participation, exemplifies the type of forum manipulation that the proper application of principles does not allow.

The Federal and State Lawsuits are not parallel actions under Louisiana law because they involve different principal demands, different parties, and distinct legal issues. The District Court legally erred misapplying five of the six *Colorado River* factors and by improperly relying on "other factors" that have no bearing on the principles underlying *Colorado River* doctrine. Finally, waiver and judicial estoppel principles should have barred Insurance Unlimited from seeking relief based on abstention after aggressively and actively litigating the Federal Lawsuit for four-and-one-half years.

The extraordinary remedy of abstention is inappropriate given these facts and circumstances. Federal courts have a "virtually unflagging obligation" to exercise jurisdiction, and abstention is justified only in exceptional circumstances based on the clearest of justifications. No such circumstances exist here. The balance of

properly applied Colorado River factors weighs heavily against abstention, and fundamental principles of federalism and judicial economy support maintaining federal jurisdiction over this four-and-a-half-year-old case that was just weeks from trial. For these reasons, this Court should reverse the District Court's Stay Order and remand with instructions to deny Insurance Unlimited's Motion to Stay and allow this case to proceed to trial in federal court.

Landmark American Insurance Company, Appellant and Counter-Defendant, respectfully requests that this Court reverse the District Court's April 24, 2025 Memorandum Order and July 8, 2025 Order denying reconsideration, vacate the stay of federal proceedings, and remand this case to the District Court for further proceedings.

Respectfully submitted,

*/s/ George D. Fagan*

**GEORGE D. FAGAN, T.A. (#14260)**
**MATTHEW M. McCLUER (#33970)**
**JESSICA A. LONGACRE (#41319)**
**Leake Andersson LLP**
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
Phone: 504-585-7500 / Fax: 504-585-7775
Emails:  *gfagan@leakeandersson.com*
          *mmccluer@leakeandersson.com*
          *jlongacre@leakeandersson.com*

***Attorneys for Plaintiff/Counter-Defendant-Appellant,***
***Landmark American Insurance Company***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing brief has been electronically served on all counsel of record and transmitted to the Clerk of Court for filing on September 24, 2025 and served on *pro se* Appellee by first-class U.S. Mail as follows:

Valerie Muse
Calcasieu Correctional Center
5300 E. Broad Street
Lake Charles, LA 70615

*s/ George D. Fagan*

_____

**GEORGE D. FAGAN**

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a) and 27(d)**

1.      This appeal brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief uses a monospaced font and contains approximately **1,271** lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Microsoft 365 (v.2509) in Times New Roman 14-point font, with 12-point font used for footnotes.

Dated:  **September 24, 2025.**


*/s/ George D. Fagan*
**GEORGE D. FAGAN, T.A. (#14260)**
**MATTHEW M. McCLUER (#33970)**
**JESSICA A. LONGACRE (#41319)**
**Leake Andersson LLP**
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
Phone: 504-585-7500 / Fax: 504-585-7775
Emails:  *gfagan@leakeandersson.com*
        *mmccluer@leakeandersson.com*
        *jlongacre@leakeandersson.com*
***Attorneys for Plaintiff/Counter-Defendant-Appellant,***
***Landmark American Insurance Company***